JUDGE TORRES

**13 CIV 6895**

Peter C. Harvey
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336.2810
Facsimile: (212) 226.2222
Email: pcharvey@pbwt.com

*Attorneys for Plaintiffs Soundview Elite LTD.,
and Vanquish Fund Ltd.*

------------------------------- x: **UNITED STATES DISTRICT COURT**
: **SOUTHERN DISTRICT OF NEW YORK**

SOUNDVIEW ELITE LTD., and
VANQUISH FUND LTD.,

   Plaintiffs,   : Civil Action No.

   -against-

   : **COMPLAINT**

GERTI MUHO and LEVERAGED
HAWK, INC.

   Defendants.
------------------------------- x

RECEIVED SEP 27 2013 U.S.D.C. S.D.N.Y. CASHIERS

## Preliminary Statement

Plaintiffs Soundview Elite Ltd. and Vanquish Fund Ltd. (collectively, "the Funds"), by and through their attorneys, Patterson Belknap Webb & Tyler LLP, bring this action against Defendants Gerti Muho and Leveraged Hawk, Inc. ("Leveraged Hawk") for conversion and unjust enrichment arising from Defendant Muho's illegal transfer of over $2,000,0000 from the Funds' bank account for his own benefit.

This case concerns a disgruntled former business associate and director who, upon departing from the Funds, attempted to wrest control of the Funds and their assets by creating a

series of bogus merger documents and contacting banking institutions at which the Funds maintained their accounts to effectuate illegal transfers to Leveraged Hawk. Muho succeeded in doing just that when, on August 8, 2013, he effected a wire transfer of over $2 million dollars from accounts held by the Funds from a Monaco branch of HSBC Bank to Leveraged Hawk. The Funds have demanded the return of these funds from both Muho and Leveraged Hawk. No funds have been returned. The Funds also have reported Defendants' conduct to law enforcement authorities. Having been substantially harmed by this unauthorized and unlawful interference with their possessory rights, Plaintiffs assert claims for conversion, seeking damages, restitution and other remedies the Court deems just and proper.

## PARTIES

1. Plaintiffs, the Funds, form part of a larger group of affiliated investment funds located in the British Virgin Islands and the Cayman Islands. Both of the plaintiffs are citizens of foreign States. Soundview Elite Ltd. and Vanguish Funds Ltd. are organized and exist under the laws of the Cayman Islands, and are located in that country. The address of the Cayman Islands Funds is dms Corporate Services Ltd., dms House, 20 Genesis Close, Grand Cayman KY1-1108.

2. Defendant Gerti Muho is a United States citizen and a New York resident having an address at 20 Exchange Place, 4504, New York, New York 10005.

3. Defendant Leveraged Hawk, Inc. ("Leveraged Hawk") is a corporation formed under the laws of the State of Delaware and having its principle place of business located, upon information and belief, at 1679 South DuPont Highway, Suite 100, Dover, Delaware and/or 20 Exchange Place, 4505, New York, New York 10005. Leveraged Hawk conducts business in New York and received the unlawful transfers from HSBC through its New

York bank account. Muho purports to be the self-appointed investment advisor to Leveraged Hawk.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to Title 28, United States Code, Section 1332(a)(2) in that there is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in the Southern District of New York pursuant to Title 28, United States Code, Sections 1391(b)(1) and 1391(c).

## FACTUAL ALLEGATIONS

### Muho's Employment with and Termination from The Richcourt Funds

6. Fletcher Asset Management ("FAM") is an investment advisor managing a group of hedge funds known as the Fletcher Funds. RF Services, LLC ("RF Services") is a financial services firm affiliated with the Funds.

7. Muho was hired to work as an Associate for RF Services in May 2012.

8. Thereafter, in August 2012, Muho was hired to work as a consultant with Asset Holding Company 5, a management company affiliated with RF Services.

9. Between August and November 2012, Muho was appointed to the Board of Directors of Soundview Elite, Ltd. ("Soundview") and Vanquish Fund, Ltd. ("Vanquish"), among other affiliated funds associated with RF Services (together the "Richcourt Funds").

10. On January 3, 2013, Muho was arrested in New York City and charged with reckless endangerment and driving while intoxicated, after allegedly fleeing from New York City Police officers and instigating a high speed chase to avoid being stopped by them.

3

6424199v.1

These charges against Muho are currently pending with the New York County District Attorney's Office.

11. Between January and April, Floyd Saunders, Corporate Secretary for the Funds, and his colleagues developed concerns about Muho's ability to perform his professional duties based on Muho's increasingly erratic behavior, arrest for reckless conduct, absence from the office, and frequently incomprehensible communications. This behavior prompted Saunders to suggest to Muho that he step down from the Board of Directors of Soundview and Vanquish as well as the other Richcourt Funds.

12. On April 3, 2013, Muho submitted his resignation in writing from the Board of Directors of Soundview, among other entities within the Richcourt Funds.

13. Following his resignation, Muho started his own venture which has no connection to the Richcourt Funds.

14. Specifically, in April 2013, Muho created Leveraged Hawk, a corporate entity that he owns and controls. Leveraged Hawk is a putative Delaware corporation that Muho has both designated as a "private equity fund" and registered with the SEC as of May 31, 2013.

15. On May 10, 2013 Muho was removed as a Director of Vanquish by written shareholder resolution of the Company.

16. As of May 10, 2013 Muho had either resigned or been formally removed by resolution from each and every one of the Richcourt Funds. Accordingly, Muho had no authority to act in any manner on behalf of the Funds, including exercising any control over the assets of the Funds.

### Muho's Attempt to Transfer Funds from Wilmington Trust

17. On April 29, 2013, however, Muho executed a series of fraudulent documents purporting to re-establish his ability to act on behalf of each of the Richcourt Funds. On each of these documents, Muho was the sole signatory and was on both sides of the transaction.

18. With respect to each of the Richcourt Funds, Muho executed phony shareholder or director resolutions ostensibly: (a) enabling each fund to be bound by the signature of one Director; (b) removing the other, actual Directors from each fund; and (c) appointing Leveraged Hawk, Muho's worthless shell company, as a Director of each of the funds.

19. The same day, April 29, 2013, Muho executed still another phony document titled "Universal Litigation Pursuit Agreement," or, alternatively, "Subscription Agreement." In that document, Muho purports to act as the sole authority on behalf of the Richcourt entities. The fraudulent Subscription Agreement states that the Richcourt Funds named therein agreed to "transfer US $5,000,000, to Leveraged Hawk," and that four affiliated investment advisors agreed to transfer "the voting shares the Investment Managers hold in" the funds in exchange for shares of Leveraged Hawk common stock – Muho's entity that he had created less than 30 days prior to this attempted asset transfer.

20. Muho intended to use the fraudulent Subscription Agreement to misappropriate and convert monies in 19 of the Richcourt Funds' accounts, including Soundview, located at Wilmington Trust in Delaware.

21. On May 7, 2013, in an effort to cloak his conduct in legitimacy, Muho purported to sign a "Resolution" allegedly bestowing upon himself the authority to undertake the

wire transfer from the Richcourt Funds to his company, Leveraged Hawk. Muho executed Wire Transfer Agreements authorizing Wilmington Trust to transfer daily monetary amounts from various Richcourt Fund accounts and attempted to effect transfer of funds from Wilmington Trust to Leveraged Hawk.

22. On June 10, 2013, a New York City lawyer acting on behalf of the Richcourt Funds contacted Wilmington Trust again advising the bank that "the instructions and documentation provided . . . by Muho are fraudulent and of no force and effect."

23. To date Wilmington Trust has not effected the fraudulent transfer of funds to Leveraged Hawk as directed by Muho. Citing disparate instructions regarding management of the Richcourt Funds' accounts, Wilmington Trust commenced an interpleader action in Delaware Superior Court on June 17, 2003. That action is filed under Civil Action No. N13C-06-156.

24. Several weeks after Muho's failed attempt to transfer funds to his company, on June 14, 2013, Muho filed a claim for unemployment benefits with the State of New York, naming RF Services as his former employer. Three days later Muho filed another claim for unemployment benefits with the State of New York, this time naming Fletcher Asset Management as his former employer.

25. On July 30, 2013, during a teleconference held in connection with the Wilmington Trust case proceedings Muho represented to a Delaware Superior Court Judge that he was unable to retain Delaware counsel to represent him in the action due to financial insolvency.

### Muho's Transfer of Funds from HSBC To Leveraged Hawk

26. Soundview and Vanquish Funds each maintain a bank account with HSBC Private Bank in Monaco.

27. The authorized signatories on these two accounts are (a) Stewart Turner and Denis Kiely for Soundview and (b) Stewart Turner and Floyd Saunders for Vanquish. Muho is not an authorized signatory on these accounts; nor is Leveraged Hawk an authorized beneficiary of the accounts.

28. On or about August 8, 2013, Plaintiffs obtained a debit advice from HSBC identifying that $2,067,377.24 was transferred on August 8, 2013 from Soundview's HSBC account to a Citibank account of which Leveraged Hawk was the beneficiary.

29. Additionally, upon information and belief, Plaintiffs presume that Muho has transferred funds from Vanquish's HSBC account to Leveraged Hawk.

30. Neither the transfer from the Soundview account nor suspected transfer from the Vanquish account were authorized by any representative of those Funds or any of the Richcourt Funds.

31. On August 15, 2013, just one week after Muho fraudulently induced HSBC to convey funds to Leveraged Hawk, and two weeks after Muho declared to Delaware Superior Court that he could not afford counsel, Muho "suddenly" obtained the resources to engage counsel to represent Leveraged Hawk in the above-referenced Wilmington Trust Delaware action.

32. By letter dated August 14, 2013, the Richcourt Funds provided notice to HSBC of the unlawful transfer.

33. Moreover, by letter dated August 19, 2013, counsel for the Richcourt Funds informed Leveraged Hawk's Delaware counsel that to the extent it had received any funds from Muho or Leveraged Hawk, it may be in possession of stolen money.

7

34. The Richcourt Funds are also preparing to make an official report of Muho's fraudulent activities to federal law enforcement authorities, and have made a report to the New York law enforcement authorities.

### FIRST CAUSE OF ACTION
### CONVERSION
### (AGAINST ALL DEFENDANTS)

35. Plaintiffs repeat and reallege paragraphs 1-34 above as though set forth fully herein.

36. Plaintiffs have complete ownership and right to possession of the funds contained in the HSBC bank accounts of Soundview and Vanquish.

37. Defendants Muho and/or Leveraged Hawk have interfered with Plaintiffs' ownership and possession of the funds held in the Soundview HSBC account in that they have effected an unauthorized and unlawful transfer of $2,067,377.24 to Leveraged Hawk for their own use.

38. Defendants Muho and/or Leveraged Hawk have interfered with Plaintiffs' ownership and possession of the funds held in the Vanquish HSBC account in that they have effected unauthorized and unlawful transfers of funds from that account for their own use.

39. Defendants Muho's and Leveraged Hawk's conduct was extreme and outrageous, essentially amounting to theft.

40. As a result of Muho's and Leveraged Hawk's conversion of funds rightfully belonging to Plaintiffs, the Funds have been deprived of the use of their assets. Plaintiffs' inability to access or use the funds held in the subject accounts has resulted in significant damages.

41. Accordingly, Plaintiffs are entitled to full restitution of the amount wrongfully converted, as well as damages for the harm caused by the wrongful detention of Plaintiffs' assets and punitive damages.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

42. Plaintiffs repeat and reallege paragraphs 1-41 above as though set forth fully herein.

43. In the manner described above, Defendants Muho and/or Leveraged Hawk have received ill-gotten gains in an amount of $2,067,377.24 or more as a result of their unlawful activities.

44. It is not just, equitable, or conscionable for Defendants to retain the funds received in the aforementioned manner, and as a consequence Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that judgment be entered in its favor against Defendants Muho and Leveraged Hawk and that Plaintiffs be provided the following relief:

1. damages to the Plaintiffs for all of their losses, including punitive damages, attorneys' fees, and reasonable costs of suit, that have resulted from Defendants' wrongful conduct, regardless of where such conduct has occurred;

2. final judgment requiring Defendants to pay full restitution to each party that has been harmed by the wrongful conduct;

3.   final judgment imposing a constructive trust on all funds and properties of Defendants that are the funds or traceable to the funds of the unlawful activities of Defendants in an amount of $$2,067,377.24, or according to proof;

4.   an asset freeze and/or an attachment be placed on all funds, negotiable instruments and/or assets held in any bank, brokerage, or other accounts, certificates of deposit, safe deposit box, or otherwise, in the name of either or both Defendants, or for the benefit of either or both Defendants directly or indirectly;

5.   such and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues in this action.

DATED: September 27, 2013
New York, New York

By: _____
Peter C. Harvey
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336-2000
Fax: (212) 336-2222
Email: pcharvey@pbwt.com

*Attorneys for Plaintiffs Soundview Elite LTD., and Vanquish Fund Ltd.*

6424199v.1