UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SOUNDVIEW ELITE LTD., and
VANQUISH FUND LTD.,

              Plaintiffs,        :    Civil Action No. 13 Civ. 6895

              -against-

GERTI MUHO and LEVERAGED
HAWK, INC.

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR AN ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER FOR A PRELIMINARY INJUNCTION, ORDER OF ATTACHMENT, AND ORDER PERMITTING EXPEDITED DISCOVERY**

Peter C. Harvey, Esq.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336-2000
Fax: (212) 336-2222

*Attorneys for Plaintiffs Soundview Elite Ltd. and Vanquish Fund Ltd.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii
INTRODUCTION .....................................................................................................................1
STATEMENT OF FACTS ........................................................................................................2
    A.    Muho's Employment with and Termination from The Richcourt Funds ..........................2
    B.    Muho's Attempt to Transfer Funds from Wilmington Trust ..............................................3
    C.    Muho's Conversion of Funds from HSBC To Leveraged Hawk ......................................5
ARGUMENT ..............................................................................................................................6
    A.    Plaintiffs Are Entitled to an Attachment Order Under
           Federal Rule of Civil Procedure 64 and CPLR Article 62 ................................................6
           1.    Plaintiffs Have Valid Causes of Action ..................................................................7
           2.    The Funds are Likely to Succeed on the Merits of the Action ...............................8
           3.    Grounds for Attachment Exist Under CPLR 6201 .................................................8
           4.    The Amount Demanded in the Complaint Exceeds All Known Counterclaims ...10
    B.    Plaintiffs are Entitled to Other Related Relief, Including a Preliminary Injunction
           Freezing Defendants' Assets and Expedited Discovery. ...................................................10
           1.    Injunctive Relief Freezing Defendants' Assets is Warranted ...............................10
           2.    Expedited Discovery is Warranted ........................................................................14
CONCLUSION ..........................................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aerotrade, Inc. v. Banque Nationale De La Republique D'Haiti,*
   376 F. Supp. 1286 (S.D.N.Y. 1974)....................................................................................7

*Am. Fed. Group v. Rothenberg,*
   1998 U.S. Dist. LEXIS 7832 (S.D.N.Y. May 27, 1998).......................................................9

*Arzu v. Arzu,*
   597 N.Y.S.2d 322 (N.Y. App. Div. 1993) ..........................................................................10

*Ayyash v. Bank Al-Madina,*
   233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................................15

*Chase Manhattan Bank v. Banque Intra, S.A.,*
   274 F. Supp 496 (S.D.N.Y. 1967) .......................................................................................8

*Comprehensive Cmty. Dev. Corp. v. Sebelius,*
   2012 U.S. Dist. LEXIS 30623 (S.D.N.Y. Mar. 7, 2012) ..............................................12, 14

*Deckert v. Independence Shares Corp.,*
   311 U.S. 282 (1940)......................................................................................................11, 13

*Dolmetta v. Uintah Nat'l Corp.,*
   712 F.2d 15 (2d Cir. 1983)...................................................................................................8

*Elliott v. Kiesewetter,*
   98 F.3d 47 (3d Cir. 1996)...................................................................................................14

*Fleet Nat'l Bank v. Trans World Airlines, Inc.,*
   767 F. Supp. 510 (S.D.N.Y. 1991) .....................................................................................12

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation),*
   770 F.2d 328 (2d Cir. 1985)...............................................................................................14

*In re Feit & Drexler,*
   760 F.2d 406 (2d Cir. 1985)...............................................................................................11

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,*
   306 F. Supp. 2d 482 (S.D.N.Y. 2004).............................................................................8, 9

*Mason Tenders Dist. Council Pension Fund v. Messera,*
   1997 U.S. Dist. LEXIS 5931 (S.D.N.Y. Apr. 30, 1997) *aff'd* 1997 U.S. App. LEXIS
   36342 (2d Cir. December 26, 1997) ............................................................................passim

*Mineola Ford Sales Ltd.v. Rapp,*
    661 N.Y.S.2d 281 (N.Y. App. Div. 1997) ................................................................. 10

*Muriel Siebert & Co., Inc. v. Intuit, Inc.,*
    868 NE.2d 208 (N.Y. 2007) ..................................................................................... 13

*Perrotta v. Giannoccaro,*
    532 N.Y.S.2d 998 (N.Y. Sup. Ct. 1988) .................................................................... 7

*Republic of Philippines v. Marcos,*
    806 F.2d 344 (2d Cir. 1986) ............................................................................. 11, 15

*Seide v. Crest Color, Inc.,*
    835 F. Supp. 732 (S.D.N.Y. 1993) ........................................................................... 11

*Sohn v. Sayres Corp.,*
    1995 U.S. Dist. LEXIS 5461 (S.D.N.Y. Apr. 26, 1995) ............................................ 7

*Swiss Bank Corp., v. Eatessami,*
    273 N.Y.S.2d 935 (N.Y. App. Ct. 1966) ................................................................... 8

*United States v. First Nat'l City Bank,*
    379 U.S. 378 (1965) ................................................................................................. 11

*Vigilant Ins. Co. of Am. v. Hous. Auth. of the City of El Paso, Tx,*
    660 N.E.2d 1121 (N.Y. 1995) ................................................................................... 7

**STATUTES**

Fed R. Civ. P. 64 .............................................................................................................. 6, 16

Fed. R. Civ. P. 65 ........................................................................................................ 11, 12, 14

Fed. R. Civ. P. 26 .................................................................................................................. 15

N.Y. C.P.L.R 6201 ............................................................................................................. 7, 9

N.Y. C.P.L.R. 6211 .................................................................................................................. 6

N.Y. C.P.L.R. 6212 ............................................................................................................. 7, 8

## INTRODUCTION

Plaintiffs Soundview Elite Ltd. and Vanquish Fund Ltd. (collectively, "the Funds"), by and through their attorneys, Patterson Belknap Webb & Tyler LLP, respectfully submit this Memorandum of Law in support of its application for an order of attachment against Defendants Gerti Muho ("Muho") and Leveraged Hawk, Inc ("Leveraged Hawk"), as well as in support for its application for a temporary restraining order freezing Defendants' assets, an order to show cause as to why a preliminary injunction should not issue, and for expedited discovery.

The Funds have brought the present action for conversion and unjust enrichment seeking the return of over $2 million that Muho illegally transferred for his benefit and for the benefit of Leveraged Hawk from the Funds' bank accounts.

The Funds seek the issuance of an order of attachment preventing Defendants, or third parties, from transferring, encumbering, conveying, divesting, or concealing any interest in the Funds' assets that have been unlawfully transferred to Defendants pursuant to Rules 6211 and 6212(a) of the New York Civil Practice Law and Rules ("CPLR") whether it be in the form of savings accounts, checking accounts, securities, or otherwise. Without the issuance of an order of attachment, the Funds will suffer irreparable harm in that the monies rightfully belonging to the Funds may not be ascertainable from Defendants if Defendants hide, conceal or divest any of those assets, particularly since it appears that Defendants are judgment proof.

The Funds also ask the Court to issue a temporary restraining order freezing Defendants' assets in order to ensure that Plaintiffs may recover their funds after case resolution—regardless of where such funds are housed—as well as an Order to show cause why a preliminary injunction should not be granted to extend the asset freeze through the duration of the litigation. Further, the Funds also seek expedited discovery to establish the location and total amount of the assets that have been unlawfully transferred by and/or to Defendants.

## STATEMENT OF FACTS

Muho is a disgruntled former business associate and director who, after being terminated for cause from the Funds, attempted to obtain control of the Funds and their assets by creating a series of make-believe merger documents and by contacting banking institutions at which the Funds maintained accounts to effectuate illegal transfers. On August 8, 2013, Muho effected a wire transfer of $2,067,377.24 dollars from accounts held by the Funds from a Monaco branch of HSBC Bank to Defendant's own company, Leveraged Hawk, Inc.

### A.     Muho's Employment with and Termination from The Richcourt Funds

In May 2012 Muho was hired to work as an Associate for RF Services, LLC ("RF Services"), a financial services firm affiliated with Fletcher Asset Management ("FAM"), an investment advisor managing a group of hedge funds including Plaintiffs Soundview Elite, Ltd. ("Soundview") and Vanquish Fund, Ltd. ("Vanquish") (together, "the Funds"). (Affidavit of Floyd Saunders, Corporate Secretary for the Richcourt Funds ("Saunders Aff."), ¶ 3; Complaint, ¶ 7.) Thereafter, in August 2012, Muho was hired to work as a consultant with Asset Holding Company 5, a management company affiliated with RF Services, and between August and November 2012, Muho was appointed to the Board of Directors of Soundview and Vanquish among other affiliated funds associated with RF Services (together the "Richcourt Funds"). (Saunders Aff., ¶¶ 4, 5; Complaint, ¶¶ 8, 9.)

On January 3, 2013, Muho was arrested in New York City and charged with reckless endangerment and driving while intoxicated, after allegedly fleeing from New York City Police officers and instigating a high speed chase to avoid being stopped by them. (Saunders Aff., ¶ 6; Complaint, ¶ 10.) The matter relating to this incident is open and pending in criminal court in Manhattan. (Complaint, ¶ 10.)

2

Between January and April of 2013, The Funds's Corporate Secretary, Floyd Saunders, and his colleagues developed concerns about Muho's ability to perform his professional duties based on Muho's increasingly erratic behavior, arrest for reckless conduct, absence from the office, and frequent incomprehensible communications. This behavior prompted Saunders to suggest to Muho that he step down from the Board of Directors of Soundview and Vanquish as well as the other Richcourt Funds. (Saunders Aff., ¶ 7; Complaint, ¶ 11.) On April 3, 2013, Muho submitted his resignation in writing from the Board of Directors of Soundview, among other entities within the Richcourt Funds. Saunders Aff., ¶ 8; Complaint, ¶ 12.)

Following his resignation, in April 2013, Muho created Defendant Leveraged Hawk, Inc. ("Leveraged Hawk"), a corporate entity that he owns and controls, which has no connection to the Richcourt Funds. (Saunders Aff., ¶ 10; Complaint, ¶ 14.)

On May 10, 2013 Muho was removed as a Director of Vanquish by written shareholder resolution of the Company. (Saunders Aff., ¶ 11; Complaint, ¶ 15.) As of May 10, 2013, having either resigned or been formally removed by resolution from each and every one of the Richcourt Funds, Muho had no authority to act in any manner on behalf of the Funds, including exercising any control over the Funds's assets. (Complaint, ¶ 16.)

**B.   Muho's Attempt to Transfer Funds from Wilmington Trust**

On April 29, 2013 Muho executed a series of fraudulent documents purporting to re-establish his ability to act on behalf of each of the Richcourt Funds. With respect to each of those funds, Muho executed phony shareholder or director resolutions ostensibly: (a) enabling each fund to be bound by the signature of one Director; (b) removing the actual Directors from each fund; and (c) appointing Leveraged Hawk, Muho's shell company, as a Director of each of the funds. (Saunders Aff., ¶ 12; Complaint, ¶¶ 17, 18.) In executing these documents, Muho stood on both sides of the transaction, essentially signing the documents as both the grantor and

3

recipient of this bogus "authority." The same day, Muho executed still another phony document titled "Universal Litigation Pursuit Agreement," or, alternatively, "Subscription Agreement." (Saunders Aff., ¶ 13; Complaint, ¶ 19.) In that document, Muho purported to act as the sole authority on behalf of the Richcourt entities. The document states that the Richcourt Funds named therein agreed to "transfer US $5,000,000, to Leveraged Hawk," and that four affiliated investment advisors agreed to transfer "the voting shares the Investment Managers hold in" the funds in exchange for shares of Leveraged Hawk common stock – Muho's entity that he had created less than 30 days prior to this attempted asset transfer. (Saunders Aff., ¶ 13, Ex. B).

On May 7, 2013, Muho purported to sign a "Resolution" allegedly bestowing himself with authority to undertake the wire transfer from Richcourt Funds located at Wilmington Trust in Delaware to his company, Leveraged Hawk. Muho executed Wire Transfer Agreements authorizing Wilmington Trust to transfer daily monetary amounts from various Richcourt Fund accounts and attempted to effect transfer of funds from Wilmington Trust to Leveraged Hawk. (Saunders Aff., ¶ 17; Complaint, ¶ 21.) To date Wilmington Trust has not affected the fraudulent transfer of funds to Leveraged Hawk as directed by Muho, having been contacted by counsel for the Richcourt Funds who instructed Wilmington Trust that Muho's documentation was fraudulent and without force and effect. Citing disparate instructions regarding management of the Richcourt Funds's accounts, Wilmington Trust commenced an interpleader action in Delaware Superior Court on June 17, 2003. That action is filed under Civil Action No. N13C-06-156. (Saunders Aff., ¶ 18; Complaint, ¶ 23.)

On June 14, 2013, several weeks after Muho's failed attempt to transfer funds to Leveraged Hawk, he filed a claim for unemployment benefits with the State of New York, naming RF Services as his former employer. Three days later Muho filed another claim for

4

unemployment benefits with the State of New York, this time naming Fletcher Asset Management as his former employer. (Saunders Aff., ¶ 19; Complaint, ¶ 24.)

During a teleconference held in connection with the Wilmington Trust case proceedings on July 30, 2013, Muho represented to the Delaware Superior Court that, despite judicial instruction to do so, he was not able to retain Delaware counsel to represent him in the action as a result of his financial insolvency. (Affidavit of Jane Metcalf, Esq. ("Metcalf Aff."), ¶¶ 4-6; Complaint, ¶ 25.)

### C.     Muho's Conversion of Funds from HSBC to Leveraged Hawk

Soundview and Vanquish Funds each maintain a bank account with HSBC Private Bank in Monaco. The authorized signatories on these two accounts are (a) Stewart Turner and Denis Kiely for Soundview and (b) Stewart Turner and Floyd Saunders for Vanquish. Muho is not an authorized signatory on these accounts; nor is Leveraged Hawk an authorized beneficiary of the accounts. (Saunders Aff., ¶¶ 20, 21; Complaint, ¶¶ 26, 27.) On August 8, 2013, Plaintiffs obtained a Debit Advice from HSBC identifying that $2,067,377.24 had been transferred on August 8, 2013 from Soundview's HSBC account to a Citibank account of which Leveraged Hawk was the beneficiary. (Saunders Aff., ¶ 22; Complaint, ¶ 28.) Additionally, Plaintiffs suspect that Muho has transferred funds from Vanquish's HSBC account to Leveraged Hawk as well, (Saunders Aff., ¶ 23; Complaint, ¶ 29), but have to date been unable to confirm that transfer was effected. Neither the transfer from the Soundview account nor suspected transfer from the Vanquish account was authorized by any representative of those Funds or any of the Richcourt Funds. (Saunders Aff., ¶ 24; Complaint, ¶ 30.)

On August 15, 2013, just one week after Muho fraudulently induced HSBC to convey funds to Leveraged Hawk, and two weeks after Muho declared to Delaware Superior Court that he could not afford counsel, Muho "suddenly" obtained the resources to engage counsel to

5

represent Leveraged Hawk in the above-referenced Wilmington Trust Delaware action. (Certification of Peter C. Harvey, Esq. ("Harvey Cert."), ¶ 6; Complaint, ¶ 31.) By letter dated August 14, 2013, the Richcourt Funds provided notice of the unlawful transfer to HSBC. (Complaint, ¶ 32.) Moreover, by letter dated August 19, 2013, counsel for the Richcourt Funds informed Leveraged Hawk's Delaware counsel that to the extent it had received any funds from Muho or Leveraged Hawk, it may be in possession of stolen money. (Complaint, ¶ 33.) The Richcourt Funds are also preparing to make an official report of Muho's fraudulent activities to federal law enforcement authorities, and have made a report to the New York law enforcement authorities. (Complaint, ¶ 34.)

The Funds commenced this action by filing a Summons and Complaint on September 27, 2013. Service was duly effected upon Leveraged Hawk on October 1, 2013 and upon Muho on October 2, 2013. (Harvey Cert. ¶ 2).

## ARGUMENT

A. **Plaintiffs Are Entitled to an Attachment Order Under Federal Rule of Civil Procedure 64 and CPLR Article 62.**

Rule 64 of the Federal Rules of Civil Procedure makes available to this Court all remedies available "under the law of the state where the court is located" providing "for seizing a person or property to secure satisfaction of the potential judgment." Fed R. Civ. P. 64(a). These remedies include "attachment." *See* Fed R. Civ. P. 64(b). Pursuant to CPLR Section 6212(a), for Plaintiffs to be entitled to the provisional remedy of attachment, they must show that (i) there is a cause of action, (ii) it is probable that the Funds will succeed on the merits, (iii) one or more grounds for attachment detailed in CPLR Section 6201 is present, and (iv) the amount demanded from the Defendants exceeds all counterclaims known to the Funds. *See* N.Y. C.P.L.R. 6212(a); *Sohn v. Sayres Corp.*, 1995 U.S. Dist. LEXIS 5461, at **3-5 (S.D.N.Y. Apr. 26, 1995); *Perrotta*

6

*v. Giannoccaro*, 532 N.Y.S.2d 998, 999 (N.Y. Sup. Ct. 1988). As described below, the Funds have sufficiently met all of the statutory requirements.

   1.   **Plaintiffs Have Valid Causes of Action**

Meeting the CPLR requirement, Plaintiffs have established *prima facie* causes of action warranting attachment, to wit conversion and unjust enrichment. *See* N.Y. C.P.L.R. 6212(a); *Perrotta*, 532 N.Y.S.2d at 999; *Aerotrade, Inc. v. Banque Nationale De La Republique D'Haiti*, 376 F. Supp. 1286 (S.D.N.Y. 1974) (Plaintiffs "are required to establish prima facie the existence of a cause of action, a requirement that must be met when such relief is sought in a federal court.").

Under New York law, an action for conversion exists where a defendant has wrongfully assumed and exercised a "right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of Am. v. Hous. Auth. of the City of El Paso, Tx,* 660 N.E.2d 1121, 1126 (N.Y. 1995) (internal quotation marks omitted). Here, Defendant Muho effected a wire transfer of Plaintiffs' HSBC account to Defendant Leveraged Hawk's Citibank account without any authorization and, concomitantly, any right to take possession of those funds. Muho and/or Leveraged Hawk currently possess those funds unlawfully to the exclusion of Plaintiffs' rights. Accordingly, Plaintiffs have established a *prima facie* case for conversion.

Furthermore, to recover under the theory of unjust enrichment in New York, Plaintiffs must establish that Defendants were enriched at the expense of the Plaintiffs and that the circumstances are such that "in equity and good conscience the defendant should return the money or property to the plaintiff." *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983); *see Chase Manhattan Bank v. Banque Intra, S.A.*, 274 F. Supp 496, 499 (S.D.N.Y. 1967). Plaintiffs have established the elements of their unjust enrichment cause of action because: (1) Defendants were enriched by the wire transfer of over $2 million to Leveraged Hawk's Citibank

7

account, (2) this action was at the expense of Plaintiff Soundview and Vanquish, as the funds were drawn on their account, and (3) Soundview and Vanquish were wrongfully deprived of the funds pilfered from their HSBC accounts. Given the deprivation Plaintiffs have suffered and illicitness of Muho's actions, equity commands the return of lost funds in full to Plaintiffs.

### 2. The Funds are Likely to Succeed on the Merits of the Action

Plaintiffs have demonstrated that under the facts alleged they would are entitled to judgment on the claims upon which attachment is based, and have established the probable validity of such claims. In meeting this requirement under CPLR 6212(a), this Court may assume the truth of the acts stated and must give Plaintiffs "the benefit of all legitimate inferences and deductions that can be made from the facts stated, although evidentiary facts making out the prima facie case must be shown." *Swiss Bank Corp. v. Eatessami*, 273 N.Y.S.2d 935, 938 (N.Y. App. Ct. 1966) (internal citation and quotation marks omitted); *see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004). Here, Plaintiffs have presented ample testimonial and documentary evidence supporting their claims, by virtue of the Metcalf and Saunders Affidavits and exhibits thereto. Plaintiffs have presented evidence in support of each cause of action, including a Debit Advice illustrating the unauthorized transfer to Leveraged Hawk's Citibank account and records showing that Muho's employment relationship with Plaintiffs was terminated by May 10, 2013 such that he had no authority to exercise control over Plaintiffs' accounts. (Saunders Aff., ¶¶ 8-11, 22; Exs. E-G, O to Saunders Aff.) Thus, Plaintiffs have established a likelihood of success on the merits of their claims.

### 3. Grounds for Attachment Exist Under CPLR 6201

Under CPLR 6201, attachment may be granted to any action except matrimonial "where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a

8

money judgment against one or more of the defendants" if "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in the plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of those acts." N.Y. C.P.L.R 6201(1), (3); *see also Am. Fed. Group v. Rothenberg*, 1998 U.S. Dist. LEXIS 7832, at *19 (S.D.N.Y. May 27, 1998) (stating that "courts generally require a showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk to the enforceability of a future judgment.") (internal quotation marks omitted). Courts typically infer Defendants' intent to frustrate enforcement of a judgment from the circumstances. *See JSC Foreign Econ. Ass'n Technostroyexport*, 306 F. Supp. 2d at 487.

Plaintiffs have established that an attachment is necessary under CPLR 6201(3) to preserve the funds at issue because Defendants are likely to spend and/or remove all such money before Plaintiffs can obtain a judgment in this action. As detailed above, shortly after stating to a Delaware Superior Court judge that neither he nor Leveraged Hawk had any money to hire counsel in the Delaware action, Muho hired counsel to represent him in litigation within days of obtaining Plaintiffs' funds from HSBC. This "coincidence" indicates that Muho has already spent or is in the process of spending the converted funds. Additionally, Plaintiffs have demonstrated a plethora of rash and fraudulent activities recently conducted by Muho which suggest that he will not feel any sense of obligation to retain the funds at issue pending outcome of the present litigation. As a substantial danger exists that Defendants will remove (or continue to remove) Plaintiff's property from their Citibank account or other storage depot in New York – whether by spending the funds, transferring, or hiding them –thereby frustrating enforcement of judgment upon resolution of this litigation, it is of the utmost importance that the assets be

preserved for security purposes. *See Arzu v. Arzu*, 597 N.Y.S.2d 322, 324-325 (N.Y. App. Div. 1993) (permitting attachment under reasonable inference that the defendants alleged to have wrongfully taken the plaintiffs' property "disposed of or secreted at least some of [that] property"); *Mineola Ford Sales Ltd. v. Rapp*, 661 N.Y.S.2d 281, 282 (N.Y. App. Div. 1997) (affirming attachment where the defendant had falsified business records and accounting ledgers and diverted the plaintiff's funds for personal use).

Plaintiffs have established that the instant application should be heard on noticed motion given the risk that the money at issue will be spent.

### 4. The Amount Demanded in the Complaint Exceeds All Known Counterclaims

The Funds seek money damages through the return of the moneys converted from their HSBC accounts, and as Plaintiffs do not know of any counterclaims that are available or alleged by Defendants, this amount exceeds all known counterclaims.

## B. Plaintiffs are Entitled to Other Related Relief, Including a Preliminary Injunction Freezing Defendants' Assets and Expedited Discovery.

Plaintiffs respectfully request that the Court issue an order to show cause why a preliminary injunction freezing defendants' assets should not be granted as well as a temporary restraining order ("TRO") freezing Defendants' finances and financial records relating to bank accounts at issue. Additionally, the Court should allow discovery to commence expeditiously in the matter so that plaintiffs can confirm the location and amounts of all funds in Defendants' custody or control that were unlawfully converted from Plaintiffs in connection with this action.

### 1. Injunctive Relief Freezing Defendants' Assets is Warranted

In addition to an attachment order, the Court should order an asset freeze to secure final judgment pursuant to Rule 65 of the Federal Rules of Civil Procedure. Rule 65 enables the Court to issue a preliminary injunction on notice to the adverse party and/or a TRO on an *ex parte*

basis. *See* Fed. R. Civ. P. Rule 65(a), (b). Significantly, "[b]oth the United States Supreme Court and the Second Circuit have made Rule 65 available to secure assets for the ultimate judgment." *Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 U.S. Dist. LEXIS 5931, at *13 (S.D.N.Y. Apr. 30, 1997) *aff'd* 1997 U.S. App. LEXIS 36342 (2d Cir. December 26, 1997); *see United States v. First Nat'l City Bank*, 379 U.S. 378, 382 (1965) ("The temporary injunction issued by the District Court seemed to us to be eminently appropriate to prevent further dissipation of assets . . . There is here property which would be the subject of the provision of any final decree in the cause.") (internal quotation marks omitted); *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940) (holding that an "injunction was a reasonable measure to preserve the status quo pending final determination of the questions raised by the action"); *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986) ("[P]reliminary injunctions are proper to prevent a defendant from making a judgment uncollectible, and a preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.") (internal brackets, citations and quotation marks omitted); *In re Feit & Drexler*, 760 F.2d 406, 416 (2d Cir. 1985) ("Even where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendants intended to frustrate any judgment on the merits.").

Indeed, this Court has on numerous occasions granted injunctive relief to prevent an entity from disposing of or transferring its assets when, in the absence of such relief, a prospective judgment would likely be rendered uncollectible. *See Seide v. Crest Color, Inc.*, 835 F. Supp. 732, 735 (S.D.N.Y. 1993); *Fleet Nat'l Bank v. Trans World Airlines, Inc.*, 767 F. Supp. 510, 517 (S.D.N.Y. 1991). In *Mason Tenders*, moreover, the District Court found a Rule 65 preliminary injunction to be especially appropriate where, as here, "the nature of the Funds

11

action is equitable [and] the Funds brought claims against [the defendants] of unjust enrichment." 1997 U.S. Dist. LEXIS 5931, at *33.

      Under Rule 65, a party's request for a TRO may be granted where:

(a) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(b) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65. Furthermore, in determining whether to grant a TRO, this Court applies the same test it would when considering a motion for preliminary injunction. *See Comprehensive Cmty. Dev. Corp. v. Sebelius*, 2012 U.S. Dist. LEXIS 30623, at *17-18 (S.D.N.Y. Mar. 7, 2012). Accordingly, "a plaintiff seeking a temporary restraining order 'must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.'" *Id.* (quoting *Psihoyos v. John Wiley & Sons, Inc.*, 2011 U.S. Dist. LEXIS 115835, at *3 (S.D.N.Y. Oct. 4, 2011)).

    Here, Plaintiffs unequivocally meet each and every one of the requirements set forth in both Rule 65 and the relevant precedent. First, Plaintiffs will likely suffer irreparable harm as evidence suggests not only that Muho is insolvent, but that has already begun to dissipate Plaintiffs' assets. *See Mason Tenders*, 1997 U.S. Dist. LEXIS 5931, at *31 (holding that the plaintiff demonstrated irreparable harm where they alleged that dissipation of the subject funds would "render [the defendant] insolvent, and unable to satisfy any potential judgment in the Funds['] favor."); *Deckert*, 311 U.S. at 290 (upholding order granting temporary injunction where "there were allegations that [the defendant] was insolvent and its assets in danger of dissipation or depletion."). As discussed above, upon information and belief, Muho used funds

12

converted from Soundview's HSBC account to retain counsel on behalf of Leveraged Hawk in litigation pending in the State of Delaware. *See* Metcalf Aff., ¶ 5; Harvey Cert., ¶¶ 5-6. That Muho represented to the Delaware Superior Court just one week prior to the transfer at issue that he could not afford counsel—only to hire a lawyer within days following the transfer—indicates that he is, in fact, using Plaintiffs' money to finance litigation against them. Because of the likelihood that Muho, through his control of Leveraged Hawk or otherwise, will continue to conceal and/or dissipate such funds, Plaintiffs have met the irreparable harm standard necessary for the issuance of a preliminary injunction and TRO.

Second, for the same reasons detailed above with regard to an order of attachment, Plaintiffs have demonstrated that they will likely succeed on the merits of their claims. Plaintiffs' Complaint alleges that Muho effected an illegal and unauthorized transfer of over $2 million from Soundview's HSBC account, funneling these stolen funds to his shell-corporation, Leveraged Hawk, for his own benefit. As addressed above, these allegations are supported by clear documentary evidence—specifically, a debit advice illustrating the unathorized transfer to Leveraged Hawk's Citibank account and records showing that Muho had no authority to make such a transfer and that his employment relationship with Plaintiffs ended on May 10, 2013, prior to the transfer. *See generally Muriel Siebert & Co., Inc. v. Intuit, Inc.*, 868 NE.2d 208, 2010 (N.Y. 2007) (observing that a former employee has no authority to bind a former employer). As such, Plaintiffs have demonstrated a likelihood of success on the merits.

Third, the balance of equities favors granting Plaintiffs requested relief. Given Muho's recent application for unemployment benefits, it is evident that he would not be able to satisfy a judgment against him without using the funds currently at issue. *See Elliott v. Kiesewetter*, 98 F.3d 47, 54 (3d Cir. 1996) ("A district court is clearly permitted to consider the likelihood that a

13

defendant will be able to pay a judgment in determining whether to enter an asset freeze order."). Muho has acted with brazen disregard for the law, holding himself out on numerous occasions through verbal and written deceit as a director of the Funds in order to steal millions of dollars from them. Indeed, Muho has created documents expounding his authority with no legitimacy and presented them to financial institutions for the purpose of confiscating funds to which he and his company are not entitled. *See* Saunders Aff., ¶¶ 12-17.

Finally, the requested preliminary restraint would create no friction with the public interest. Rather, the requested order seeks merely to preserve the status quo and ensure that the funds at issue are not dispersed or hidden during this action. *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 338 (2d Cir. 1985) ("Preliminary injunctions under Rule 65 are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand."); *Comprehensive Cmty. Dev. Corp.*, 2012 U.S. Dist. LEXIS 30623, at *25 (S.D.N.Y. March 7, 2012) (stating that Rule 65 "empowers courts to act to maintain the status quo.").

Indeed, granting Plaintiff's request for injunctive relief freezing Defendants' assets would be entirely in line with this Circuit's well-settled case law. Here, just as in *Mason Tenders*, the "assets [that would be] frozen by this injunction are related to the subject matter of the underlying suit." 1997 U.S. Dist. LEXIS 5931 at *33. Indeed, the relief sought "is of the same character as that which may be granted finally," *Republic of Philippines*, 806 F.2d at 365. Accordingly, Plaintiffs' application should be granted.

    2.    **Expedited Discovery is Warranted**

Finally, this Court should allow Plaintiffs to obtain expedited discovery in connection with the foregoing matters. This Court has great discretion as to the timing of discovery and may so order it under Rule 26(d) of the Federal Rules of Civil Procedure. In particular, Rule 26(d)(1)

expressly provides for discovery before the Rule 26(f) conference "when authorized . . . by court order." Fed R. Civ. P. 26(d)(1). In determining whether Plaintiffs are entitled to expedited discovery, courts in this District apply a standard of "reasonableness and good cause." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005). In *Ayyash*, the court granted *ex parte* application for expedited discovery under "the flexible standard of reasonableness and good cause" where "Plaintiff has made a strong evidentiary showing of the substantiality of his claims" and in consideration that defendants had "both incentive and capacity to hide their assets." *Id.* The court found that there was "considerable urgency to plaintiff's need to seek information about the location of defendants' possible assets within the United States." *Id.* Similarly, in the present action, as detailed above, good cause exists to allow Plaintiffs to commence limited discovery immediately in order to identify documents and assets that Defendants have taken from Plaintiffs' custodian and may be attempting to hide, as well as the location of such assets.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order to show cause, with a temporary restraining order, why a preliminary injunction, order of attachment and order permitting expedited discovery should not be issued.

DATED: October 15, 2013.

By: _____
Nicolas Commandeur, Esq.
Peter C. Harvey, Esq.
Ethan Krasnoo, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336-2000
Fax: (212) 336-2222

*Attorneys for Plaintiffs Soundview Elite Ltd.
and Vanquish Fund Ltd.*