Peter C. Harvey
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336.2810
Facsimile: (212) 226.2222
Email: pcharvey@pbwt.com

*Attorneys for Plaintiffs Soundview Elite LTD.,
and Vanquish Fund Ltd.*

------------------------------ x   UNITED STATES DISTRICT COURT
SOUNDVIEW ELITE LTD., and          SOUTHERN DISTRICT OF NEW YORK
VANQUISH FUND LTD.,
                                   Civil Action No. 13 cv 06895 (AT)
              Plaintiffs,
                                   **AFFIDAVIT OF FLOYD SAUNDERS**
       -against-

GERTI MUHO and LEVERAGED
HAWK, INC.

              Defendants.
------------------------------ x

FLOYD SAUNDERS, being duly sworn, does depose and say:

1. I am the Corporate Secretary for the Richcourt Funds, a group of private investment funds which includes Plaintiffs Soundview Elite Ltd. ("Soundview") and Vanquish Fund Ltd. ("Vanquish Fund"). I submit this Affidavit in support of the Plaintiffs' Motion for an Order of Attachment and Temporary Restraining Order Freezing Defendants' Assets and an Order Expediting Discovery. I have personal knowledge of the facts set forth in this Affidavit.

2. Fletcher Asset Management ("FAM") is an investment advisor managing a group of hedge funds known as the Fletcher Funds. RF Services, LLC ("RF Services") is a financial services firm affiliated with the Richcourt Funds.

6428502v.1

### Gerti Muho's Employment History with the Richcourt Funds

3. Defendant Gerti Muho ("Muho") was hired to work as an Associate for RF Services in May 2012. (A true and correct copy of his offer letter for that position is attached to this Affidavit as **EXHIBIT A**.)

4. Thereafter, in August 2012, Muho was hired to work as a consultant with Asset Holding Company 5, a management company affiliated with RF Services. (A true and correct copy of his offer letter for that position is attached to this Affidavit as **EXHIBIT B**.)

5. Between August and November 2012, Muho was appointed to the Board of Directors of Soundview and Vanquish Fund as well as other entities within the Richcourt Funds. (True and correct copies of Muho's Consent to Act as Director of Soundview and Vanquish Fund are attached to this Affidavit as **EXHIBIT C**.)

6. On January 3, 2013, Muho was arrested in New York City and charged with reckless endangerment and driving under the influence, after allegedly engaging in a high speed chase to avoid being stopped by officers of the New York City Police Department. (A true and correct copy of the New York Criminal Court record of these charges is attached to this Affidavit as **EXHIBIT D**.)

7. Between January and April of 2013, my colleagues at the Richcourt Funds and I developed concerns about Muho based on his increasingly erratic behavior, arrest for reckless conduct, absence from the office and frequently incomprehensible communications. This behavior prompted my colleagues and me to suggest to Muho that he step down from the Board of Directors of the Richcourt Funds.

8. On April 3, 2013, Muho submitted his resignation in writing from the Board of Directors of Soundview and other entities within the Richcourt Funds. (A true and correct copy of Muho's resignation from Soundview is attached to this Affidavit as **EXHIBIT E**.)

9. After leaving the Richcourt entities, Muho started his own venture which has no connection to the Richcourt Funds.

10. Specifically, in April 2013, Muho created an entity that he owns and controls: Defendant Leveraged Hawk, Inc. ("Leveraged Hawk"). Leveraged Hawk is a putative Delaware corporation that Muho has both designated as a "private equity fund" and registered with the SEC as of May 31, 2013. (A true and correct copy of the Form D filed for Leveraged Hawk, retrieved from the SEC's publicly-accessible database, is attached to this Affidavit as **EXHIBIT F**.) Muho did not advise me or my colleagues at the Richcourt Funds that he had created Leveraged Hawk.

11. On May 10, 2013 Muho was removed as a Director of Vanquish Fund. (The May 10, 2013 Resolution of Vanquish Fund effecting Muho's removal is attached to this Affidavit as **EXHIBIT G**.)

### Muho's Initial Attempts to Steal Money from the Richcourt Funds

12. Despite his resignation from Soundview, on April 29, 2013, Muho executed a series of fraudulent documents purporting to re-establish his ability to act on behalf of each of the Richcourt Funds. With respect to each of those Funds, Muho executed phony resolutions ostensibly: (a) enabling each Fund to be bound by the signature of one Director; (b) removing the other, actual Directors from each Fund; and (c) appointing Leveraged Hawk, Muho's shell company, as a Director of each Fund. (A true and correct copies of the above-referenced resolution relating to Soundview is attached to this Affidavit as **Exhibit H**).

3

13. The same day, April 29, 2013, Muho executed still another phony document titled "Universal Litigation Pursuit Agreement," or, alternatively, "Subscription Agreement." In that document, Muho purports to act as the sole authority on behalf of the Richcourt Funds, including Soundview. Specifically, the document states that the Richcourt Funds named in the document agreed to "transfer US $5,000,000, to Leveraged Hawk," and that four affiliated investment advisors agreed to transfer "the voting shares the Investment Managers hold in [the Funds," in exchange for shares of Leveraged Hawk common stock – Muho's entity that he had created less than 30 days prior to this attempted asset transfer. Obviously, Leveraged Hawk has no assets and its stock is worthless. (A true and correct copy of the "Subscription Agreement" is attached to this Affidavit as **EXHIBIT I.**)

14. By May 1, 2013 my colleagues at the Richcourt Funds and I learned for the first time that Muho had formed Leveraged Hawk. We also learned that Muho had attempted to transfer ownership of the Richcourt Funds to Leveraged Hawk. Additionally, we learned that Muho had boasted that he had "completed an inside takeover of Richcourt." (A true and correct copy of e-mail correspondence of May 1, 2013 detailing these events is attached to this Affidavit as **EXHIBIT J.**)

15. Realizing that Muho was using the stationary and other documents of the Richcourt Funds for his own self-serving activities, on May 2, 2013 I sent a letter to Muho directing that he stop his unlawful conduct. I advised Muho that, because Fletcher Asset Management Inc., Richcourt Holdings Inc., and related or affiliated entities had terminated their relationship with Muho, he was required to, among other things, immediately "[c]ease and desist any efforts to act on behalf of the Companies," and "[r]eturn any files, folders, [or] documents" relating to the Companies in his possession. (A true and correct copy of that letter is attached to

this Affidavit as **EXHIBIT K**.)  My goal was to protect the Richcourt Funds from a fraudulent transfer, and stop Muho from continuing to submit fraudulent documents to a federally insured financial institution.

16. On May 7, 2013, Muho executed Wire Transfer Agreements that purported to authorize Wilmington Trust, N.A.—a Delaware bank with which several entities within the Richcourt Funds held custody accounts—to transfer $999,999,999 *per day* from Soundview's account. That same day, Muho contacted Wilmington Trust and attempted to transfer $1 million from Soundview to his own entity, Leveraged Hawk. (True and correct copies of the Wire Transfer Agreement and Muho's wire transfer instructions are attached to this Affidavit as **EXHIBIT L**.)

17. On May 7, 2013, in a desperate effort to cloak his conduct in legitimacy, Muho purported to sign a "Resolution" allegedly giving authority to himself to undertake the wire transfer from the Richcourt Funds to Leveraged Hawk. (A true and correct copy of the purported "Resolution" pertaining to Soundview is attached to this Affidavit as **EXHIBIT M**.) In other words, Muho authorized himself to transfer the Richcourt Funds' money to himself by having the funds sent to the bank account of Leveraged Hawk, a company for which he is the sole owner and employee.

18. Wilmington Trust did not complete the fraudulent transfer of funds to Leveraged Hawk as directed by Muho. Citing disparate instructions regarding management of the Richcourt Funds' accounts, Wilmington Trust commenced an interpleader action in Delaware Superior Court on June 17, 2003. That action is filed under Civil Action No. N13C-06-156

19. In June 2013, weeks after Muho's failed attempt to transfer funds to his company, Muho filed a claim for unemployment benefits with the State of New York, naming RF Services

6428502v.1

as his former employer. Days later Muho filed another claim for unemployment benefits with the State of New York, this time naming Fletcher Asset Management as his former employer. (True and correct copies of communications from the New York State Department of Labor notifying RF Services and Fletcher Asset Management of Muho's claims for unemployment benefits are attached to this Affidavit as **EXHIBIT N**.)

### Muho's Transfer of Funds from HSBC To Leveraged Hawk

20. Soundview and Vanquish Fund each maintain a bank account with HSBC Private Bank in Monaco.

21. The authorized signatories on these two accounts are (a) Stewart Turner and Denis Kiely for Soundview and (b) Stewart Turner and Floyd Saunders for Vanquish. Muho is not an authorized signatory on these accounts; nor is Leveraged Hawk an authorized beneficiary of the accounts.

22. On or about August 8, 2013, Plaintiffs obtained a debit advice from HSBC identifying that $2,067,377.24 was transferred on August 8, 2013 from Soundview's HSBC account to a Citibank account of which Leveraged Hawk was the beneficiary. (A true and correct copy of the debit advice reflecting said transfer is attached to this Affidavit as **EXHIBIT O**.)

23. Additionally, upon information and belief, I presume that Muho has transferred funds from Vanquish's HSBC account to Leveraged Hawk.

24. Neither the transfer from the Soundview account nor suspected transfer from the Vanquish account were authorized by any representative of those Funds or any of the Richcourt Funds.

25.  Soundview has suffered significant damage as a result of the deprivation of these assets in that has been unable to pay numerous bills, causing disruption of its regular course of operations.

_____
FLOYD SAUNDERS

Sworn before me this 9th
day of October 2013.

_____
Notary Public
My commission expires
11/13/16.

WALTER ARTHUR GOODE JR.
Notary Public, State of New York
Qualified in Nassau County
No. 01G06271946
My Commission Expires 11-13-2016

6428502v.1