Damzsouh                          Hearing

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SOUNDVIEW ELITE LTD. and
     VANQUISH FUND LTD.,
 4
                      Plaintiffs,
 5
                 v.                          13 CV 6895 (AT)
 6
     GERTI MUHO and LEVERAGED HAWK,
 7   INC.,

 8                    Defendants.

 9   ------------------------------x

10                                       October 22, 2013
                                         3:10 p.m.
11
     Before:
12
                         HON. ANALISA TORRES,
13
                                             District Judge
14
                              APPEARANCES
15
     PATTERSON, BELKNAP, WEBB & TYLER LLP
16        Attorneys for Plaintiffs
     BY:  NICHOLAS COMMANDEUR
17        ETHAN M. KRASNOO

18   ALSO PRESENT:  Floyd Saunders
                    Elizabeth Riordan
19

20

21

22

23

24

25
```

1          3:10 p.m.

2          (Case called)

3          MR. COMMANDEUR:  Good afternoon, your Honor, Nicholas

4    Commandeur from Patterson, Belknap, Webb & Tyler for the

5    plaintiffs.  I have with me Mr. Floyd Saunders who is a client

6    representative, secretary of the relevant funds, and my

7    colleagues Ethan Krasnoo and Elizabeth Riordan.

8          THE COURT:  So tell me what has happened since our

9    last meeting.

10          MR. COMMANDEUR:  Well, since we last were together

11   last week, your Honor, we have complied with your Honor's

12   order.  We posted the bond.  We also effectuated service.  Your

13   Honor had in the last Wednesday's order indicated that service

14   needed to be complete by yesterday.  In fact, we served the

15   entity defendant Leveraged Hawk on Thursday the next day, and

16   then we served Mr. Muho who is the individual defendant on

17   Friday, we served him at the same address where we had

18   previously served the complaint.

19          In addition to that, your Honor, we filed the

20   affidavits of service with the Court.

21          In addition to that, yesterday, since we hadn't heard

22   anything from him, we sent all of the papers by e-mail to the

23   e-mail address that we had for Mr. Muho.  We also attempted to

24   deliver the papers to another address that we had in Manhattan

25   associated with him, and there was no one home.  We confirmed

Damzsouh                         Hearing

1    that it is a residence that he apparently maintains, it's in

2    downtown Manhattan, but there was no one there.

3           So we have not heard anything from him yet.  We have

4    completed service.

5           Today is also the day by which I believe, if I'm

6    calculating the time correctly, his answer to the original

7    complaint is due.  So we may be in a situation where, you know,

8    come tomorrow he's in default in the case.

9           So from our perspective, your Honor, the relief that

10   we are seeking is certainly a continuation of the restraining

11   order that your Honor issued last week so that he can't further

12   dissipate these funds that are at issue.  And we would also

13   request, as we had identified in our Order to Show Cause, an

14   attachment order so that we can actually go out -- we have

15   identified certain accounts where these funds were transferred

16   to as we explained to your Honor last Wednesday.  It seems as

17   though the majority of the funds have already been transferred.

18   It may be that all of the funds have been transferred at this

19   point.  But we would like to have the ability to issue that

20   order of attachment.

21          In addition, your Honor, we would like to conduct some

22   expedited discovery.  It's unclear if the defendants will be

23   participating in this action, so whether we're going to be able

24   to get discovery from them is unclear.  I would imagine,

25   though, we may want to pursue some additional discovery from

Damzsouh                    Hearing

1   different banks.  As your Honor may recall when we here on

2   Wednesday we had some information from the Citibank account

3   where the funds were transferred to, but we understand that

4   Mr. Muho may maintain some other accounts and we would like to

5   try to obtain discovery of those accounts as well to see if we

6   can track where those funds have gone.

7       And of course, you know, I'm happy to make a more

8   fulsome presentation about, you know, what would be the merits

9   not only of our substantive claim, but also the other issue

10  obviously that I know the Court considers when considering

11  attachment and preliminary injunction, you know, the real risk

12  in this case that the funds are going to be dissipated and that

13  the defendant will be unable to satisfy any judgment that we

14  ultimately obtain.  Those arguments were spelled out in our

15  papers and I know the Court has considered, but I'm happy to

16  address those if that would be useful.

17      THE COURT:  Exactly how was he served?

18      MR. COMMANDEUR:  He was served -- when we were serving

19  the complaint we tried several addresses.  We had one address

20  for him in California.  We went to that address, and the couple

21  who answered the door said they never heard of him.

22      We then tried to serve him at the address that we had

23  in Lower Manhattan, and it was an address where he maintains an

24  apartment.  The doorman at that building confirmed that he

25  lives there, but he hadn't seen him in weeks.

Damzsouh                        Hearing

1          We then found an address in Ridgewood, I believe, in

2     Queens which is where which we effectuated service.  It was

3     accepted by I believe his mother.  The papers were accepted,

4     the complaint at that address.  And then -- which is

5     appropriate under New York rules of service of process which

6     applies here.  And then so when we were serving the papers --

7     and obviously we served the papers on, the complaint on

8     Leveraged Hawk, the corporate entity through their designated

9     agent of service.  And so we did the same when we were serving

10    your Honor's order on the restraining order last week, we

11    served the same address in Ridgewood where we had previously

12    served the complaint.  We also served the same agent of process

13    for Leveraged Hawk and filed those affidavits of service.  And

14    then, as I said, in an abundance of caution we sent courtesy

15    copies to the other outlets of communication that we had for

16    him.  We did that yesterday, and we still haven't heard

17    anything.

18          THE COURT:  You may be seated.

19          MR. COMMANDEUR:  Okay.

20          THE COURT:  So at this point you are seeking three

21    things; the preliminary injunction, the attachment order, and

22    an order permitting early discovery, correct?

23          MR. COMMANDEUR:  That's correct, your Honor.

24          THE COURT:  Okay.  All right so I am just going to

25    read my decision into the record having reviewed all of the

Damzsouh                          Hearing

1   papers submitted by plaintiffs.

2           Plaintiffs, Soundview Limited and Vanquish Fund

3   Limited move pursuant to Rule 64 of the Federal Rules of Civil

4   Procedure and CPLR article 62 for a preliminary injunction

5   extending my October 16th, 2013 order which froze the assets of

6   defendants Gerti Muho and Leveraged Hawk, Inc and order of

7   attachment.

8           Plaintiffs also seek expedited discovery including an

9   order that defendant Muho shall appear for a deposition.

10          What date are you looking for?

11          MR. COMMANDEUR:  Your Honor, we had proposed I think

12  in an order to show cause it happen sometime in November under

13  the assumption that we would like to get out some document

14  requests, limited in nature, and have those before we take the

15  deposition.  Obviously, the challenge we have here is that if

16  we don't have a cooperative counter party -- I mean, we

17  obviously can serve our discovery demands, but I don't have

18  much faith that we'll hear anything from him or, you know, be

19  able to work out a schedule.  I suppose if your Honor can set a

20  date for him to appear for a deposition, that may be helpful.

21  Then at least we have, you know, the power of the Court's

22  order, and perhaps sometime in mid November for that.  But,

23  again, I don't hold out much hope that we're going to hear from

24  him.

25          THE COURT:  How is November 18th?

Damzsouh                        Hearing

1          MR. COMMANDEUR:  I think that would be fine, your

2     Honor.

3          THE COURT:  As I was stating, the plaintiffs also seek

4     expedited discovery, including an order that defendant shall

5     appear for deposition, and that plaintiff may serve

6     interrogatories and document requests upon defendants, which

7     shall be answered and produced, respectively, no later than ten

8     days prior to the deposition.  For the reasons stated below,

9     both applications are granted.

10          Federal Rule of Civil Procedure 64 makes available to

11     the Court all the remedies under the law of this state where

12     the court is located providing for seizing a person or property

13     to secure satisfaction of the potential judgment.  Federal Rule

14     of Civil Procedure 64(a).  These remedies include attachment.

15     Federal Rule of Civil Procedure 64(b).

16          Under CPLR Section 6212(a), to obtain an order of

17     attachment plaintiffs must show the following:  One, there is a

18     cause of action; two, it is probable that plaintiffs will

19     succeed on the merits; three, one or more grounds for

20     attachment detailed in CPLR Section 6201 is present; and, four,

21     the amount demanded from the defendants exceeds all

22     counterclaims known to the plaintiffs.

23          Plaintiffs have established causes of

24     action for conversion and unjust enrichment.

25          Conversion exists where a defendant has wrongfully

Damzsouh                    Hearing

assumed and exercised a right of ownership over goods belonging
to another to the exclusion of the owner's rights.  Vigilant
Insurance Company of America versus Housing Authority of the
City of El Paso, Texas, 660 Northeast 2d 1121, 1136, New York
1995.  Based upon the evidence submitted by plaintiffs,
defendant Muho affected a wire transfer of $2,067,337.24 from
plaintiffs' HSBC account to defendant Leveraged Hawk's Citibank
account without any right or authorization.  Muho and/or
Leveraged Hawk currently possess the funds to the exclusion of
plaintiffs' right.  Accordingly, plaintiffs have established a
prime facie case of conversion.

          Unjust enrichment exists where defendants were
enriched at the expense of the plaintiffs, and the
circumstances are such that in equity and in good conscience
the defendant should return the money or property to the
plaintiff.  Dolmetta versus Unintah National Corporation, 712
F.2d, 15, 20, Second Circuit, 1983.  Based upon the evidence
submitted, plaintiffs have established unjust enrichment.
Defendants were enriched by the wire transfer of over $2
million to Leveraged Hawk's Citibank account, which was at the
expense of Soundview and Vanquish, as the funds were drawn on
their account, so Soundview and Vanquish were wrongfully
deprived of the funds.

          Plaintiffs have demonstrated a likelihood of success
on the merits.  Plaintiffs have presented evidence in support

Damzsouh                              Hearing

of each cause of action in the form of the Metcalf and Saunders

affidavits and documents, including a Debit Advice

memorializing the unauthorized transfer to Leveraged Hawk's

Citibank account and the records showing that Muho's employment

relationship with plaintiff was terminated by May 10th, 2013,

such that he had no authority to exercise control over

plaintiffs' accounts.

        Under CPLR 6201, attachment may be granted where the

plaintiff has demanded, and would be entitled, in whole or in

part, or in the alternative, to a money judgment against one or

more of the defendants if the defendant with intent to defraud

his creditors or frustrate the enforcement of a judgment that

might be rendered in the plaintiffs' favor, has assigned,

disposed of, encumbered or secreted property, or removed it

from the state or is about to do any of those acts.  CPLR 6201

and 3.  See also American Federal Group versus Rothenberg, 1998

U.S. District Lexis 7832 at 19, Southern District of New York

May 27th, 1998, stating that "courts generally require a

showing that something, whether it is a defendant's financial

position or past and present conduct poses a real risk to the

enforceability of a future judgment."  Courts typically infer

defendants' intent to frustrate enforcement of a judgment from

the circumstances.  See JSC Foreign versus Trade Services, 306

F. Supp. 2d, 482, Southern District of New York 2004.

        Plaintiffs have established that an attachment is

Damzsouh                    Hearing

 1    necessary under CPLR 6201(3) to preserve the funds because

 2    defendants are likely to spend or remove the money before

 3    plaintiffs could obtain a judgment in this action.  Shortly

 4    after staying to a Delaware Superior Court Judge that neither

 5    he nor Leveraged Hawk had any money to hire counsel in the

 6    Delaware action, Muho hired counsel to represent him in a

 7    litigation within days after obtaining plaintiffs' funds from

 8    HSBC.  This indicates that Muho may have already spent or is

 9    maybe in the process of spending the converted funds.

10    Additionally, plaintiffs have submitted evidence of

11    questionable behavior involving Muho, including Muho's initial

12    unsuccessful attempts to convert money from the Richcourt

13    Funds' accounts on May 7th, 2013, and gambling in Atlantic City

14    on August 20th, 2013, that suggests he may not retain the funds

15    at issue pending outcome of the present litigation.  A

16    substantial danger exists that defendants may remove or

17    continue to remove plaintiffs' property from their Citibank

18    account or elsewhere in the Southern District of New York,

19    whether by spending the funds, transferring or hiding them.

20    Indeed, the Court has learned from plaintiffs' attorneys that

21    as of October 16th, 2013 less than $500,000 remains in the

22    Citibank account of the original 2,067,377.24.

23          Plaintiffs seek money damages through the return of

24    the monies converted from their HSBC accounts, and as

25    plaintiffs state that they do not know any counterclaims that

Damzsouh                        Hearing

1    are available or alleged by defendants, this amount exceeds all

2    known counterclaims.

3           The standard for an entry of a temporary restraining

4    order is the same as for a preliminary injunction.

5           First, the likelihood of success on the merits;

6    second, irreparable harm in the absence of an injunction.  I've

7    already addressed requirements one and two.

8           The third requirement is a balance of he hardships

9    tipping in the movant's favor.  Here the balance of hardships

10   tips in plaintiffs' favor.  Given Muho's recent application for

11   unemployment benefits, it appears unlikely that he will be able

12   to satisfy a judgment against him without plaintiffs' funds.

13   See Elliott versus Kiesewetter, 98 F.3d, 45, 54, Third Circuit,

14   1996.  "A district court is clearly permitted to consider the

15   likelihood that a defendant will be able to pay a judgment in

16   determining whether to enter an asset freeze order."

17          Finally, the requested preliminary restraint would not

18   undermine the interests of the public.  Rather, the requested

19   order seeks merely to preserve the status quo and ensure that

20   the funds at issue are not dispersed or hidden during this

21   action.  See In Re:  Baldwin-United 770 F.2d 328, 338 Second

22   Circuit, 1985.  "Preliminary injunctions under Rule 65 are

23   designed to preserve status quo between the parties before the

24   court pending a decision on the merits of the case at hand."

25          Finally, this Court will allow plaintiffs to obtain

Damzsouh                          Hearing

1    expedited discovery.  This Court possess significant discretion

2    as to the timing of discovery under Rule 26(d) of the Federal

3    Rules of Civil Procedure.  In particular Rule 26(d)(1)

4    expressly provides for discovery before the Rule 26(f)

5    conference when authorized by court order.  In determining

6    whether plaintiffs are entitled to expedited discovery, courts

7    in this district apply a standard of reasonableness and good

8    cause.  Ayyash Bank v. Al-Madina, 233 F.R.D. 325, 326, Southern

9    District of New York 2005.  In Ayyash, the Court granted an ex

10   parte application for expedited discovery under the flexible

11   standard of reasonableness and good cause where plaintiff has

12   made a strong evidentiary showing of the substantiality of his

13   claims and in consideration that defendants had both incentive

14   and capacity to hide their assets.  Id.

15        In the present action, good cause exists to allow

16   plaintiffs to commence limited discovery immediately in order

17   to identify documents and assets that defendants obtained from

18   plaintiffs and may be attempting to hide, as well as the

19   location of such assets.

20        So I am going to set down the deposition date as

21   November 18th, and I am willing to sign an order of attachment.

22   Do you have that ready?

23        MR. COMMANDEUR:  I don't have one with me, but if it's

24   all right with your Honor, we can submit, if not later today,

25   certainly tomorrow.

Damzsouh                          Hearing

1              THE COURT:  That's fine.

2              MR. COMMANDEUR:  Okay.  Thank you.

3              THE COURT:  Is there anything else?

4              MR. COMMANDEUR:  I think that's all for -- we may also

5    issue some subpoenas to some of the financial institutions that

6    we suspect he may also hold accounts at, but I don't envision

7    that requiring any oversight from the Court.

8              THE COURT:  Okay, thank you.

9              MR. COMMANDEUR:  Thank you, your Honor.

10             (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25